Argued and submitted February 9, affirmed September 7, 1983

STATE ex rel DEPARTMENT
OF REVENUE,
*Respondent,*

*v.*

CAPITAL SHELTERS, INC.,
*Appellant.*

(OTC 1697-S, SC 28783)

668 P2d 1214

Brian J. MacRitchie of Gray, Fancher, Holmes & Hurley, Bend, argued the cause and filed briefs for appellant.

Elizabeth S. Stockdale, Assistant Attorney General, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Salem.

Before Lent, Chief Justice,* and Peterson,** Campbell, Roberts, Carson and Jones, Justices.

LENT, J.

---

* Chief Justice when this case was argued.

** Chief Justice when this decision was rendered.

**LENT, J.**

This case presents an issue which has arisen frequently in recent years.[1] The question is the scope of the Department of Revenue's subpoena power under ORS 305.190(1). Appellant, Capital Shelters, Inc., contends that the Department's subpoena power is limited by the term "necessary," which appears in the statute twice, to instances of what amount to compelling need for information.

■     We hold that there is no such limitation on the scope of the Department's subpoena power. The term "necessary," as contained by the statute, means relevant to the purposes of a lawful investigation and the object of a demonstrable, practical need.

The Department of Revenue subpoenaed records from Capital Shelters, Inc. in order to verify defendant's reportable income and to check for losses suspected to have been improperly claimed by persons contracting with Capital Shelters. Defendant failed to comply, and the Department of Revenue sought enforcement of its order in the Oregon Tax Court. The Tax Court enforced the subpoena, relying in part on *Pope & Talbot, Inc. v. State Tax Com.*, 216 Or 605, 340 P2d 960 (1959). Capital Shelters has appealed the order to this court. We affirm.

Capital Shelters bases its opposition to enforcement of the order on a construction of ORS 305.190(1), which is the statute that defines and confers the Department's subpoena power. It reads as follows:

> "The director of the Department of Revenue, in conforming to the resolutions or rules of the Department, may subpoena and examine witnesses, administer oaths and order the production of any books or papers in the hands of any person, company, or corporation, *whenever necessary in the prosecution of any inquiries deemed necessary or proper in their official capacity.*" (Emphasis added)

Capital Shelters contends that the term "necessary" as used in the above statute has yet to be interpreted by this court and that we should follow persuasive federal authority to

---

[1] *See Eola Con. Tile & Prod. Co. v. Dept. of Rev.*, 288 Or 241, 603 P2d 1181 (1979), and cases there cited.

the effect that necessary information is not information already in the Department's possession. Capital Shelters then goes on to argue that the information sought by the Department was in the Department's possession.

Although we have never directly addressed the interpretation of the term "necessary" in ORS 305.190(1), the definition of that term is implicit in our holdings in *Pope & Talbot, Inc. v. State Tax Com.,* 216 Or at 615, and *Dept. of Rev. v. D.R. Johnson Lbr. Co.,* 289 Or 679, 683, 617 P2d 603 (1980). In *D.R. Johnson* this court stated:

> "The scope of the Department's discovery power under ORS 305.190(1) is extensive. The rule is firmly established that an agency's subpoena power is limited only to the extent that 'the inquiry must be relevant to a lawful investigatory purpose and must be no broader than the needs of the particular investigation.' *Pope & Talbot, Inc. v. State Tax Com.,* 216 Or 605, 615, 340 P2d 960 (1959)."

We call attention to the part of that holding which reads, "* * * an agency's subpoena power is limited *only* to the extent that 'the inquiry must be *relevant to a lawful investigatory purpose* and must be *no broader than the needs of the particular investigation.*' " We emphasize that the court ruled that relevancy to a lawful investigatory purpose and being of a scope no broader than the needs of the investigation are the *"only"* limitations upon the agency's *"extensive"* subpoena power. The degree to which the term "necessary" limits the Department's subpoena power must be no greater than those limits declared in *D.R. Johnson.*

The matter does not end here, however, for although there is no question here as to the lawfulness of the investigatory purpose, *Pope & Talbot, Inc. v. State Tax Com., supra,* there persists a question as to whether the information sought is "needed" by the investigation.

Capital Shelters did not argue in favor of any specific legal definition of the "needs of a particular investigation." Instead, Capital Shelters offers an example of what need (or necessity) is not by reference to federal authority interpreting § 7605(b) of the Internal Revenue Code of 1954 which performed a function similar to that of the statute here in issue. The example offered by Capital Shelters is contained in

*United States v. Powell,* 379 US 48, 53, 85 S Ct 248, 13 L Ed2d 112 (1964). There the Supreme Court ruled, inter alia, that:

> "If, in order to determine the existence or nonexistence of fraud in the taxpayer's returns, information in the taxpayer's records is *needed which is not already in the Commissioner's possession,* we think the examination is not 'unnecessary'." (Emphasis added)

Although Capital Shelters does not interpret this holding in its brief, it is implicit in the Court's ruling that the class of that which is necessary information subject to subpoena does not include what is already in the agency's possession. The Court further held that in order to enforce a "John Doe" summons (similar to a subpoena),

> "[The Commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession * * *."

*United States v. Powell,* 379 US at 58.

Capital Shelters contends that since the Department can isolate names of the taxpayers it seeks from Capital Shelters through matching other income tax returns with Capital Shelters', the information sought by the subpoena is in the Department's possession and, therefore, is not within the needs of the investigation according to *Powell.*

We resolve this case, however, without approving or rejecting this facet of the *Powell* standard of review.[2] Even if we recognize that a rule that the information sought must not already be in the agency's possession may protect citizens from possible harassment and "willful" intrusion, Capital Shelters' assertion that the information sought in this case is already in the Department's possession strains the concept of possession past common understanding. The Department can generate the information through a laborious, time consuming and expensive examination of some 200,000 tax returns. This power to generate the information, however, falls far short of

---

[2] *Cf.* Parker, "Contours of Oregon Administrative Law," Willamette L.J. 145, 155 (1960), which indicates that this court follows the federal rule.

possession of the information. Furthermore, the difficulty that the Department would have in retrieving the information is itself a demonstration of practical need which forecloses any suspicion of harassment.

Affirmed.